415 S.E.2d 885

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Michael HENSLER, Defendant Below, Appellant.**

**No. 20210.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 1992.

Decided March 20, 1992.

Teresa A. Tarr, Asst. Atty. Gen., Charleston, for appellee.

David Gibbs, Zachary S. Gray, Gibbs & Craze Co., L.P.A., Coneaut, Ohio, Gregory Campbell, Charleston, for appellant.

PER CURIAM:

This is an appeal by Michael Hensler from an order of the Circuit Court of Brooke County sentencing him to two concurrent terms of from one-to-five years in the State penitentiary for two convictions of first-degree sexual abuse and for two other concurrent terms of from one-to-five years for two additional convictions of first-degree sexual abuse. On appeal, among other things, the defendant claims that *W.Va.Code*, 61–8B–1(1)(c), was improperly applied in his case, either as an unconstitutional *ex post facto* law, or in violation of his right to due process of law. After reviewing the record and the questions presented, this Court agrees. The defendant's conviction is, therefore, reversed.

During the 1985–86 school year, the defendant, a minister, operated a private school, called the Great Hope Baptist Academy, in the basement of his home located in Brooke County, West Virginia. Among his pupils was a fourteen-year-old boy whose tuition had been waived in exchange for the boy agreeing to do work in the defendant's yard. This case arises out of accusations that the defendant, on four occasions during the 1985–86 school year, made

sexual advances to the boy while the boy was at the defendant's home.

On November 6, 1989, as a result of the boy's accusations, a grand jury in Brooke County indicted the defendant on four counts of first-degree sexual abuse in violation of *W. Va. Code*, 61–8B–7. The defendant was subsequently tried on the charges, and on February 28, 1990, a jury found him guilty on all counts.

In the present proceeding, the defendant alleges that the trial court allowed the jury to consider the definition of terms contained in *W. Va. Code*, 61–8B–1(1)(c), in determining whether he had violated *W. Va. Code*, 61–8B–7, and he claims that since *W. Va. Code*, 61–8B–1(1)(c), was the law in West Virginia only after the dates of the alleged crimes, the application of *W. Va. Code*, 61–8B–1(1)(c), to his case constituted the application of an *ex post facto* law and that it violated his right to due process of law.

As previously indicated, the defendant was charged with four courts of sexual abuse in the first degree in violation of *W. Va. Code*, 61–8B–7. That Code section provides, in relevant part:

(a) A person is guilty of sexual abuse in the first degree when:

(1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion; ...

During the 1985–86 school year, when the alleged crimes were committed, *W. Va. Code*, 61–8B–1, defined "forcible compulsion" as follows:

(1) "Forcible compulsion" means:

(a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or

(b) Threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person or in fear that he or another person will be kidnapped.

In 1986, *W. Va. Code*, 61–8B–1, was amended to add a subsection (c), which indicated that "forcible compulsion" also meant:

(c) Fear by a child under sixteen years of age caused by intimidation, expressed or implied, by another person four years older than the victim.

Subsection (c) had an effective date of July 1, 1986, after the close of the school year at the Great Hope Baptist Academy and after the dates of the crimes charged in the indictment.

In settling the instructions in the defendant's case, the trial court indicated that the evidence did not support an instruction on forcible compulsion as defined in subsections (a) and (b) of *W. Va. Code*, 61–8B–1. The court further said:

I think it's clear at this point in time, as Mr. Gallagher pointed out, that the only subdivision of forcible compulsion, and this is how I have it defined in the last paragraph, would be as follows: "Forcible compulsion as it relates to the indictment in this case means fear by a child under 16 years of age caused by intimidation expressed or implied by another person four years older than the victim."

The court later proceeded to instruct the jury to that effect.

On appeal, the defendant contends that the instruction given by the court contained a definition of forcible compulsion which was not a part of the law until *W. Va. Code*, 61–8B–1(1)(c), went into effect on July 1, 1986, that is, after the date of the alleged events which gave rise to the indictment in this case. The defendant argues that the application of the definition constitutes the unconstitutional application of an *ex post facto* law to his case and constituted the denial of due process of law.

*Ex post facto* prohibitions arise out of Article I, Section 10, clause 1 of the United States Constitution and out of West Virginia Constitution, Article III, section 4. The United States Constitution states: "No State shall ... pass any Bill of Attainder, ex post facto law, or law impairing the Obligation of Contracts, ..." Similarly, the West Virginia Constitution states: "... No bill of attainder, ex post facto law, or law impairing the obligation of a contract shall be passed."

■ As indicated in *State v. R.H.*, 166 W.Va. 280, 273 S.E.2d 578 (1980), these constitutional provisions, strictly read, prohibit only enactment of retroactive legislation and do not apply to judicial action. However, both the United States Supreme Court and this Court have recognized that the principle on which the prohibition against *ex post facto* action is based is a fundamental concept of constitutional liberty embodied in the due process clauses of the respective Constitutions. *Marks v. United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); *State v. R.H., supra.* As indicated in the *R.H.* case, due process places a limitation on retroactive judicial application of statutory enactments which precludes the court from effecting a result which the legislature is barred from achieving as a result of the *ex post facto* prohibition.

■ In the criminal context, the Court has indicated that a law passed after the commission of an offense may not be applied to a defendant because it places certain burdens on him. The basic rule is set forth in syllabus point 1 of *Adkins v. Bordenkircher*, 164 W.Va. 292, 262 S.E.2d 885 (1980):

> Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him.

In the somewhat later decision in *State v. R.H., supra,* the Court adopted the classic United States Supreme Court definition of an *ex post facto* law as set out by Justice Samuel Chase of the United States Supreme Court in *Calder v. Bull*, 3 Dall. 386, 3 U.S. 386, 1 L.Ed. 648 (1798), which indicates that an *ex post facto* law is:

> (1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action;
> (2) every law that aggravates a crime, or makes it greater than it was when committed;
> (3) every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed;
> (4) every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the commission of the offense, in order to convict the offender.

*See State v. R.H., supra* 166 W.Va. at 288–89, 273 S.E.2d at 583–84, and *State v. Short*, 177 W.Va. 1, 350 S.E.2d 1 (1986).

■ In the present case, the record rather clearly shows that at the time of the acts charged in the indictment against the defendant, *W.Va.Code*, 61–8B–1, defined "forcible compulsion" for the purposes of *W.Va.Code*, 61–8B–7, as "[p]hysical force that overcomes such earnest resistance as might reasonably be expected under the circumstances" or "[t]hreat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person or in fear that he or another person will be kidnapped." It did not define "forcible compulsion" as "[f]ear by a child under sixteen years of age caused by intimidation, expressed or implied, by another person four years older than the victim." The statute was only amended to include the third definition, that is, fear by a child under sixteen, after the close of the school year at the Great Hope Baptist Academy, and after the time of the acts alleged in the indictment against the defendant.

In this Court's view, the addition of subsection (c), the language defining forcible compulsion as fear by a child under sixteen years of age under the special circumstances set forth, altered the proof which could support a conviction for first-degree sexual abuse under *W.Va.Code*, 61–8B–7. Whereas, prior to enactment of the language an individual could be convicted only upon a showing that he had employed physical force to subject another to physical contact or that he had used a threat or intimidation of death, injury, or kidnapping, after the enactment of *W.Va.Code*, 61–8B–1(1)(c), an individual could be convicted when he, being four years older than a

child under sixteen years of age, obtained sexual contact with that child through any sort of intimidation, regardless of whether it involved a threat of death, injury, or kidnapping.

In this Court's view, the fact that the new language allowed conviction of different and less testimony fundamentally altered the proof required for the offense. Given this, the Court believes that under the fourth element set forth in the test in *Calder v. Bull, supra,* the application of the amended language in the defendant's trial was the application of an *ex post facto* law. The Court also believes that such an application was improper under the due process clauses of the State and Federal Constitutions and under our decision. For this reason, the Court believes that the defendant's conviction must be reversed.

The Court notes that the record suggests that the trial court did not feel that an instruction to the jury on subsections (a) and (b) of *W.Va.Code,* 61–8B–1, was appropriate in this case. During trial there was rather clear evidence that the alleged sexual incidents in this case involved sexual abuse by an individual in a superior position and involved substantial bodily contact in closed areas controlled by the defendant. The Court feels that it would have been appropriate for the jury to have considered whether the alleged actions of the defen-

dant rose to the level of forcible compulsion defined in subsections (a) and (b) of *W.Va.Code,* 61–8B–1, and that instructions could properly have been given on those definitions.

For the reasons stated, the judgment of the Circuit Court of Brooke County is reversed, and this case is remanded for a new trial.[1]

Reversed and remanded.

---

1. The Court notes that the defendant makes a number of other assignments of error in this case. The defendant, for instance, claims that the prosecution unconstitutionally shifted the burden of proof to him. This claim is predicated upon the fact that the prosecutor made certain remarks to the effect that the defendant did not disprove the elements of the State's case. Since a new trial is already required in this case, and since the remarks will without doubt be different during the new trial, the Court feels that it is unnecessary to discuss this point. However, the Court notes that there is guidance in this State on appropriate prosecutorial comment. *See, e.g., State v. Bennett,* 172 W.Va. 131, 304 S.E.2d 35 (1989); *State v. Goad,* 177 W.Va. 582, 355 S.E.2d 371 (1987); and *State v. Petrice,* 183 W.Va. 695, 398 S.E.2d 521 (1990).

The defendant also claims that the trial court erred in failing to dismiss the indictment in the case because it failed to give specific dates on which the offenses charged were committed. In view of the fact that there is a body of law suggesting that omission of a date is not fatal to

an indictment unless a statute of limitations applies or unless time enters into the essence of the offense, the Court believes that this claim by the defendant is without merit. *See State v. Chaffin,* 156 W.Va. 264, 192 S.E.2d 728 (1972); *State v. Lewis,* 138 W.Va. 743, 77 S.E.2d 606 (1953); *State v. Pennington,* 41 W.Va. 599, 23 S.E. 918 (1896); and *Tincher v. Boles,* 364 F.2d 497 (4th Cir.1966).

Lastly, the defendant claims that the trial court improperly allowed the State to introduce evidence of collateral crimes against him in violation of Rule 404(b) of the West Virginia Rules of Evidence. Again, since a new trial is required in this case, the Court feels that it is unnecessary to discuss this evidentiary point. However, the Court notes that there are a number of cases which discuss the admission of collateral crime evidence which should be considered in conjunction with the new trial of the defendant. *See, e.g., State v. Bonham,* 184 W.Va. 555, 401 S.E.2d 901 (1990); *State v. Messer,* 166 W.Va. 806, 277 S.E.2d 634 (1981).