439 S.E.2d 423

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**GEORGE W.H., Defendant Below, Appellant.**

No. 21658.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1993.

Decided Dec. 13, 1993.

---

**562**

Darrell V. McGraw, Jr., Atty. Gen., Teresa L. Sage, Asst. Atty. Gen., Charleston, for appellee.

Philip A. LaCaria, LaCaria & Hassan, Rudolph J. Murensky, II, Welch, for appellant.

MILLER, Justice:

The defendant, George W.H.,[1] appeals from a final order of the Circuit Court of McDowell County, entered August 3, 1992, sentencing him to six consecutive sentences for committing sexually-related crimes against his daughter, Rita G.H. The offenses were committed on two separate occasions. The first incident occurred in either 1984 or 1985, and the second incident occurred in May of 1990.

The defendant was indicted for committing the same three offenses on both occasions. Counts one through three of the indictment relate to the first incident, while counts four through six relate to the second one. The indictment charges the defendant in counts one and four with incest in violation of W.Va. Code, 61–8–12[2]; in counts two and five with sexual assault in the second degree in violation of W.Va.Code, 61–8B–4 (1984)[3]; and in counts three and six with "sexual abuse by a

---

1. In cases involving sensitive facts, we follow our traditional practice of not using last names to avoid stigmatizing the involved parties. *See, e.g.,* *State ex rel. Div. of Human Serv. by Mary C.M. v. Benjamin P.B.,* 183 W.Va. 220, 395 S.E.2d 220 (1990); *Nancy Viola R. v. Randolph W.,* 177 W.Va. 710, 356 S.E.2d 464 (1987).

2. The indictment does not indicate any of the dates when the applicable code sections were enacted. The indictment merely states "as amended" after listing each code section. We have determined that the appropriate date for count one, for the event that occurred in either 1984 or 1985, is W.Va.Code, 61–8–12 (1984), and the appropriate date for count four, for the incident that occurred in May of 1990, is W.Va.Code, 61–8–12 (1986). We recognize W.Va. Code, 61–8–12 (1984), was not effective until July 1, 1984. However, we note that the testimony reveals that Rita was about ten or eleven years old, and she did not become ten years old until after the 1984 statute was effective.

The relevant parts of W.Va.Code, 61–8–12 (1984), and W.Va.Code, 61–8–12 (1986), are identical. These sections provide:

"(b) A person is guilty of incest when such person engages in sexual intercourse or sexual intrusion with his or her father, mother, brother, sister, daughter, son, grandfather, grandmother, grandson, granddaughter, nephew, niece, uncle or aunt.

"(c) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than five years nor more than ten years, or fined not more than five thousand dollars and imprisoned in the penitentiary not less than five years nor more than ten years."

3. We undertake the same analysis as we did in note 2, *supra,* for counts two and five of the indictment to determine the applicable year of W.Va.Code, 61–8B–4. W.Va.Code, 61–8B–4 (1984), which became effective July 1, 1984, applies to both counts and provides:

"(a) A person is guilty of sexual assault in the second degree when:

"(1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion; or

"(2) Such person engages in sexual intercourse or sexual intrusion with another person who is physically helpless.

"(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than ten nor more than twenty years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than ten nor more than twenty years."

custodian"[4] in violation of W.Va.Code, 61–8D–5(a) (1988).[5] The defendant was convicted by a jury on all six counts.

On appeal, the defendant makes the following assignments of error: (1) that his convictions for the 1984 or 1985 incident of sexual abuse by a custodian, W.Va.Code, 61–8D–5(a), and sexual assault in the second degree, W.Va.Code, 61–8B–4, violate the prohibition against *ex post facto* laws found in Section 10 of Article I of the United States Constitution and Section 4 of Article III of the West Virginia Constitution; (2) that his convictions for incest, W.Va.Code, 61–8–12, and sexual abuse by a custodian, W.Va.Code, 61–8D–5(a), violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 5 of Article III of the West Virginia Constitution; and (3) that his convictions for both counts of sexual assault in the second degree, W.Va. Code, 61–8B–4, violate the Sixth Amendment to the United States Constitution and Sections 4 and 14 of Article III of the West Virginia Constitution because the indictment fails to allege an essential element of the offense. The defendant also argues that his convictions should be reversed because certain evidence should have been excluded under Rule 403 of the West Virginia Rules of Evidence, and because the verdicts were based on insufficient evidence and cumulative error.[6]

## I.

## FACTS

The essential facts are as follows. Rita G.H. lived with her natural mother and father and her two younger brothers in McDowell County. On May 11, 1990, Rita told school officials that her father was having sexual intercourse with her. School officials contacted the police and Rita gave a statement to Trooper J.R. Pauley on that same day.

At the time, Rita was fifteen years old. She told Trooper Pauley that her father had touched and felt her for as long as she could remember, the earliest recollection of which was at about age five. Rita described several incidents of sexual abuse and sexual assault committed by her father. One of the events involved the defendant penetrating her with his penis when she was ten or eleven years old. Rita said it happened when she was riding with her father in a red truck and he pulled off the road into a dip where no one could see them. She recalled

---

4. Although the indictment reads "[s]exual abuse by a custodian," the actual heading of this section is "[s]exual abuse by a parent, guardian or custodian; parent, guardian or custodian allowing sexual abuse to be inflicted upon a child; displaying of sex organs by a parent, guardian or custodian; penalties."

5. Because W.Va.Code, 61–8D–5, did not exist until 1988, an *ex post facto* problem with the charge is raised in regard to count three of the indictment concerning the 1984 or 1985 incident. This problem will be discussed in the text of this opinion. This section does apply to count six of the indictment for the May 1990 incident. W.Va.Code, 61–8D–5(a) (1988), provides:

"In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection, as follows: If any parent, guardian or custodian of a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such con-

duct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such guardian or custodian shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than five nor more than ten years, or fined not less than five hundred nor more than five thousand dollars and imprisoned in the penitentiary not less than five years nor more than ten years."

6. The defendant lists other errors in his brief regarding the circuit court's failure to direct a verdict for the defendant and to give certain jury instructions offered by the defendant, and its acceptance of certain jury instructions offered by the prosecution. To the extent that these issues are not covered by other errors and are not argued in the defendant's brief, these errors are deemed waived on appeal. *See Dawson v. All-State Ins. Co.,* 189 W.Va. 557, 564, 433 S.E.2d 268, 275 (1993); Syl. pt. 3, *Higginbotham v. City of Charleston,* 157 W.Va. 724, 204 S.E.2d 1 (1974), *overruled on other grounds, O'Neil v. City of Parkersburg,* 160 W.Va. 694, 237 S.E.2d 504 (1977).

that her father tied her hands behind her back, pulled up her dress, took off her panties, and inserted his penis in her vagina. After he finished, she stated that her father told her that if she told anyone, he would beat her. At the end of the statement, Trooper Pauley asked Rita if her father ever "penetrated" her at any other times. She said she understood what the word "penetrated" meant and replied no. Thereafter, Rita was removed from her home.

In February of 1991, Rita gave another statement to the police. She reported to Deputy Sheriff Ronald L. Blevins that her father had "sexual intercourse" with her, by inserting his penis in her vagina, the day before she reported the situation to school officials and gave her statement to Trooper Pauley. On this occasion, she said her father had intercourse with her after he watched her take a bath. She stated that during the incident her father held his hand over her mouth so she could not scream and afterwards gave her twenty-five dollars. She told the police officer "[m]y father would have sex with me about ten times a month. This has been going on since I was five years old. When my father wouldn't have sex with me he would play with my breasts and and [sic] touch other parts of my body."

Rita's mother testified that Child Protective Services first became involved with their family and she first became aware of Rita's complaints back in 1988 after Rita attempted to run away from home. Although the record is not clear as to the actual reason why she left, Rita's parents found her within a day and brought her home. Rita's mother said she signed an agreement in 1988 with Child Protective Services promising not to leave Rita alone with the defendant. She stated she kept this promise.

Shortly before Rita informed officials of her father's acts in May of 1990, she had a disagreement with her parents over her participation in a school band program. Rita's mother and the defendant testified that Rita was not permitted to participate in the program because they could not afford it. Ac-

cording to her parents and her brothers, Rita was upset over the decision. Rita denied being angry.

The grand jury indicted the defendant for two of the incidents Rita described in her statements, the one involving the red truck when Rita was ten or eleven years old and the May 1990 incident reported to Deputy Blevins in February of 1991.

## II.

## EX POST FACTO

### A.

The defendant asserts that his convictions for the 1984 or 1985 episode of sexual abuse by a custodian under W.Va.Code, 61–8D–5(a), and sexual assault in the second degree under W.Va.Code, 61–8B–4, violate the constitutional prohibition of *ex post facto* laws.[7] In explaining the basic prohibition against *ex post facto* laws, we stated in Syllabus Point 1 of *Adkins v. Bordenkircher*, 164 W.Va. 292, 262 S.E.2d 885 (1980):

"Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him."

In *State v. R.H.*, 166 W.Va. 280, 288–89, 273 S.E.2d 578, 583–84 (1980), *overruled on other grounds*, *State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1981), we further defined an *ex post facto* law by adopting its classic definition as set forth by the United States Supreme Court in *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798):

" '(1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; (2) every law that aggravates a crime, or makes it greater than it was when committed; (3) every law that changes the punishment, and inflicts a

---

**7.** Section 10 of Article I of the United States Constitution provides in relevant part: "No State shall ... pass any ... ex post facto Law[.]"

Section 4 of Article III of the West Virginia Constitution, in pertinent part, states: "No ... ex post facto law ... shall be passed."

greater punishment than the law annexed to the crime when committed; (4) every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the commission of the offense, in order to convict the offender.' "

It would defy our notion of fundamental fairness to allow otherwise and punish a defendant under a statute that either did not exist at the time the act was committed or was altered in such a way as to affect the substantive rights of the defendant. It is clear that the crime of sexual abuse by a custodian did not exist until 1988. Thus, count three of the indictment charging the defendant with this offense for the 1984 or 1985 incident violates *ex post facto* principles. The State concedes this point in its brief.

■ In the case at bar, the State also admits that count two, for sexual assault in the second degree, violates *ex post facto* principles. In the indictment, count two states, in relevant part, that the defendant had "sexual contact without [Rita's] consent and with lack of consent resulting from *forcible compulsion*, thereby committing 'sexual assault in the second degree[.]' " (Emphasis added). However, the circuit court instructed the jury that "forcible compulsion," in part, means "fear by a child under sixteen years of age caused by intimidation, expressed or implied, by another person four years older than the victim[.]" This instruction was based on the definition of forcible compulsion in W.Va.Code, 61–8B–1(1)(c) (1986). However, W.Va.Code, 61–8B–1(1)(c), was not a part of the definition of forcible compulsion in 1984 or 1985, and, in fact, did not become effective until July 1, 1986, well after the 1984 or 1985 incident.[8]

This case is virtually identical to the situation that arose in *State v. Hensler*, 187 W.Va. 81, 415 S.E.2d 885 (1992). In that case, the defendant appealed his convictions of first-

degree sexual abuse, W.Va.Code, 61–8B–7, because the circuit court gave an instruction to the jury that included a definition of "forcible compulsion" as contained in W.Va.Code, 61–8B–1(1)(c). The events that gave rise to the charges, however, occurred during the 1985–86 school year which was prior to July 1, 1986, the effective date of subsection (1)(c). In reversing the convictions, we held that the addition of subsection (1)(c) "fundamentally altered the proof required for the offense." Subsection (1)(c) permits a conviction to be obtained when a defendant, "being four years older than a child under sixteen years of age, obtained sexual contact with that child through any sort of intimidation, regardless of whether it involved a threat of death, injury, or kidnapping." *State v. Hensler,* 187 W.Va. at 83–84, 415 S.E.2d at 887–88.

For the foregoing reasons, we find it necessary to reverse George W.H.'s conviction on count two of the indictment for sexual assault in the second degree. As we did in *Hensler,* where we remanded the case for a new trial, we likewise do not foreclose the State's option to retry George W.H. using the definition of "forcible compulsion" as it existed when the event occurred in either 1984 or 1985. *See* note 8, *supra.*

### B.

■ While we do not reverse the defendant's conviction under count five for sexual assault in the second degree for the May 1990 incident since subsection (1)(c) was adopted in 1986, we do note that the circuit court applied the wrong penalty for this offense. The circuit court sentenced the defendant under an amendment to W.Va.Code, 61–8B–4, effective July 1, 1991, to serve a term of "not less than ten nor more than twenty-five years" in the penitentiary. The 1984 version of the statute provides that upon conviction a defendant "shall be imprisoned in the penitentiary not less than ten nor more than twenty years[.]"

---

8. At the time of the act, "forcible compulsion" was defined in W.Va. Code, 61–8B–1 (1984), as follows:

"(1) 'Forcible compulsion' means:

"(a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or

"(b) Threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person or in fear that he or another person will be kidnapped."

The same problem exists with the defendant's other sentences. For the incest convictions in counts one and four pursuant to W.Va. Code, 61–8–12, the defendant was sentenced under a 1991 amendment to two terms of "not less than five years nor more than fifteen years[.]" The applicable 1984 and 1986 versions of W.Va.Code, 61–8–12, both provide for a term of "not less than five years nor more than ten years[.]"

Likewise, as to count six for the 1990 offense of sexual abuse by a custodian, the defendant was sentenced to a term of "not less than five nor more than fifteen years" under the 1991 amendment to sexual abuse by a custodian, W.Va.Code, 61–8D–5(a). The 1988 version of W.Va.Code, 61–8D–5(a), states the sentence should be "not less than five nor more than ten years[.]"

Thus, the sentences for counts one, four, five, and six violate *ex post facto* principles because none of the offenses occurred after the 1991 amendments enhancing the penalties. As we have earlier pointed out, *ex post facto* principles apply when a defendant receives an enhanced punishment for an offense, but the enhancement was enacted after the crime was committed. Therefore, upon remand, the circuit court should sentence the defendant in accordance with the provisions of the appropriate statute.

### III.

### DOUBLE JEOPARDY

■ The defendant argues that his convictions for incest, W.Va.Code, 61–8–12, and sexual abuse by a custodian, W.Va.Code, 61–8D–5(a), violate the constitutional prohibition against double jeopardy.[9] Double jeopardy, however, is no longer an issue with regard to the 1984 or 1985 incident because the defendant's conviction of sexual abuse by a custodian is reversed on *ex post facto* grounds. The question left to be resolved is whether the defendant can be convicted of both incest and sexual abuse by a custodian for the May 1990 incident.

The defendant contends he cannot be convicted of both offenses because the indictment specifically reads that he committed both offenses by engaging in "sexual intercourse" with his daughter. The defendant asserts it would be impossible for him to have committed sexual abuse by a custodian by having sexual intercourse with his daughter without also committing incest.

■ We previously addressed the issue of double jeopardy in relation to sexual abuse by a parent, custodian, or guardian, W.Va. Code, 61–8D–5(a), in *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992). In Syllabus Point 1 of *Gill,* we relied upon the United States Supreme Court case of *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65, (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), in outlining the constitutional protections found in the Double Jeopardy Clause of the Fifth Amendment:

"The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."[10]

■ We also said the West Virginia Constitution provides at least as many protections as the Fifth Amendment, and summarized these protections in Syllabus Point 2 of *Gill:*

" 'The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution,* provides immunity from further

---

9. The Fifth Amendment to the United States Constitution provides, in part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb[.]" Section 5 of Article III of the West Virginia Constitution states, in part: "No person shall ... be twice put in jeopardy of life or liberty for the same offense."

10. In *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court held that states were bound by the Fifth Amendment constitutional guarantee against double jeopardy by virtue of the Fourteenth Amendment to the United States Constitution. *See* Syllabus Point 3, *State v. Gill, supra.*

prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense.' Syllabus Point 1, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977)." The focus in this case, as was the focus in the *Gill* case, is whether the sentences the defendant received violate the prohibition against multiple punishments for the same offense.

The United States Supreme Court addressed the issue of multiple punishments in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Supreme Court said that when "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. (Citation omitted). However, in several subsequent cases, the Supreme Court recognized that the *Blockburger* test is one of statutory construction and should not control statutes in which Congress has made its intent clear.[11] In *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771 (1985), the Supreme Court announced: "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature—in this case Congress—intended that each violation be a separate offense."

We have followed the Supreme Court's rulings in regard to multiple punishments for the same act or transaction. We adopted the

*Blockburger* test in Syllabus Point 8 of *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983):

"Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." [12]

We further said in Syllabus Points 7 and 8 of *Gill:*

"7. A claim that double jeopardy has been violated based on multiple punishments imposed after a single trial is resolved by determining the legislative intent as to punishment.

"8. In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof the other does not. If there is an element of proof that is different, then the presumption is that the legislature intended to create separate offenses."

*Gill* is dispositive of the present case because it addressed W.Va.Code, 61–8D–5(a), the same statutory provision involved in the case at bar. In Syllabus Point 9 of *Gill,* we held:

"W.Va.Code, 61–8D–5(a) (1988), states, in part: 'In addition to any other offenses

11. *See Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425, 433 (1984) (holding that the legislature is vested with the substantive power to prescribe crimes and establish punishment and, therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent[.]"); *Missouri v. Hunter,* 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 543–44 (1983) (reasoning the *Blockburger* rule is one of statutory construction and "is not a constitutional rule requiring courts to negate clearly expressed legislative intent."); *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275, 282 (1981) (stating *Blockburger*

should not apply where "there is a clear indication of contrary legislative intent."); *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715, 723–24 (1980) (holding *Blockburger* invokes statutory construction with an underlying assumption "that Congress ordinarily does not intend to punish the same offense under two different statutes."). *See also* Syllabus Point 5, *Gill, supra.*

12. Syllabus Point 8 of *Zaccagnini* is virtually identical to language in *Blockburger v. United States,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection[.]' Thus, the legislature has *clearly and unequivocally declared its intention that sexual abuse involving parents, custodians, or guardians, W.Va. Code, 61–8D–5, is a separate and distinct crime from general sexual offenses, W.Va. Code, 61–8B–1, et seq., for purposes of punishment.*" (Emphasis added).

Although Syllabus Point 9 provides that sexual abuse by a parent, custodian, or guardian is separate and distinct from the general sexual offenses in W.Va.Code, 61–8B–1, *et seq.*, the legislature specifically directed that it be considered separate from other offenses in the Code. We, therefore, hold that the defendant's convictions under W.Va.Code, 61–8–12, for incest, and under W.Va. Code, 61–8D–5(a), for sexual abuse by a custodian, do not violate the double jeopardy prohibition against multiple punishments for the same offense. The legislature made it exceptionally clear that W.Va. Code, 61–8D–5(a), is a separate offense from other Code sections. Therefore, it becomes unnecessary for us to apply the *Blockburger* rule of statutory construction.[13]

## IV.

### DEFECTIVE INDICTMENT

█ The defendant next argues that both of his convictions for sexual assault in the second degree under W.Va.Code, 61–8B–4, violate the Sixth Amendment to the United States Constitution and Sections 4 and 14 of Article III of the West Virginia Constitution [14] because both counts in the indictment fail to state an essential element of the offense.[15] Counts two and five of the indictment, in part, read as follows:

"Charge: Sexual assault in the second degree

"That ... [appropriate date], in the said County of McDowell, George [W.H.], did, unlawfully and feloniously, subject another person, Rita [G.H.], to *sexual contact* without her consent and with lack of consent resulting from forcible compulsion, thereby committing 'sexual assault in the second degree', in violation of West Virginia Code 61–8B–4, as amended, against the peace and dignity of the State." (Emphasis added).

The defendant asserts that these counts are defective because sexual assault in the second degree is committed by either "sexual intercourse" or "sexual intrusion", and is not committed by "sexual contact".[16] Instead, the defendant points out that "sexual contact" is an element of sexual abuse in the first degree, W.Va.Code, 61–8B–7 (1984), which carries with it a much lighter penalty.[17]

In addressing the adequacy of an indictment, the United States Supreme Court in

---

**13.** In *State v. Peyatt*, 173 W.Va. 317, 321, 315 S.E.2d 574, 578 (1983), we applied the *Blockburger* rule and concluded: "[S]eparate convictions for sexual assaults and incest, although they arise from the same act, do not constitute the same offense for purposes of the double jeopardy clauses." (Citations omitted).

**14.** The Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation[.]"

Section 4 of Article III of the West Virginia Constitution states, in part: "No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury." Section 14 of Article III of the West Virginia Constitution provides, in part: "In all such [criminal] trials, the accused shall be fully and plainly informed of the character and cause of the accusation[.]"

**15.** Although it is not argued or mentioned by the defendant, Rule 7(c)(1) of the *West Virginia Rules of Criminal Procedure* (1981) is relevant and provides, in part:

"The indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.... The indictment ... shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated."

**16.** For the entire text of W.Va.Code, 61–8B–4, *see* note 3, *supra.*

**17.** W.Va.Code, 61–8B–7, describing sexual abuse in the first degree, provides:

"(a) A person is guilty of sexual abuse in the first degree when:

"(1) Such person subjects another person to *sexual contact* without their consent, and the

*United States v. Cruikshank,* 92 U.S. (2 Otto) 542, 558, 23 L.Ed. 588, 593 (1875), explained two minimum criteria that are necessary for an indictment to be sufficient under the Sixth Amendment. First, the Court said the indictment must provide the defendant with enough information to allow him to prepare a defense and to protect him against further prosecution for the same offense. Second, the indictment must describe the charge with enough certainty for a court to determine whether the facts "are sufficient in law to support a conviction[.]"

 Recently, in *State v. Childers,* 187 W.Va. 54, 415 S.E.2d 460 (1992), we reiterated our adoption of similar criteria to test the sufficiency of an indictment under our Constitution. In Syllabus Point 1 of *Childers,* we stated:

" '[Under Article III, Section 14 of the West Virginia Constitution,] [a]n indictment is sufficient when it clearly states the nature and cause of the accusation against a defendant, enabling him to prepare his defense and plead his conviction as a bar to later prosecution for the same offense.' Syllabus Point 1, *State v. Furner,* 161 W.Va. 680, 245 S.E.2d 618 (1978)."

After expounding upon these criteria, we said in Syllabus Point 2 of *Childers:*

" 'An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the

particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syllabus Point 3, *State v. Hall,* 172 W.Va. 138, 304 S.E.2d 43 (1983)."

Therefore, under both the United States Constitution and the West Virginia Constitution, the indictment brought against George W.H. must be evaluated in terms of whether it provided him with enough information to defend against the charge of sexual assault in the second degree and whether it will bar a future prosecution for the same offense.

After reviewing the entire record, we find that the defendant knew he was charged with sexual assault in the second degree and not sexual abuse in the first degree and that he prepared his defense in accordance with this belief. In fact, we cannot find anywhere in the record where this issue was raised below. From both the indictment itself and the State's answer to a motion for discovery, the defendant was aware that the counts related to two specific incidents involving "sexual intercourse." [18]

Moreover, counts two and five clearly state that the charge is "sexual assault in the second degree ... in violation of West Virginia Code 61–8B–4". The counts follow the statutory language of W.Va.Code, 61–8B–4(a)(1), except they include the term "sexual contact" instead of "sexual intercourse" or "sexual intrusion." Although these terms are defined differently in the Code,[19] we con-

lack of consent results from forcible compulsion; or

"(2) Such person subjects another person to sexual contact who is physically helpless; or

"(3) Such person, being fourteen years old or more, subjects another person to sexual contact who is eleven years old or less.

"(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years." (Emphasis added).

18. We also note the trial court instructed the jury that "[s]exual assault in the second degree is committed when a person engages in *sexual intercourse*[.]" (Emphasis added). The judge did not mention the words "sexual contact."

19. In W.Va.Code, 61–8B–1 (1986), the terms are defined as follows:

"In this article, unless a different meaning plainly is required:

\*　　\*　　\*

"(6) 'Sexual contact' means any intentional touching, either directly or through clothing, of the anus or any part of the sex organs of another person, or the breasts of a female or intentional touching of any part of another person's body by the actor's sex organs, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

"(7) 'Sexual intercourse' means any act between persons not married to each other involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person.

clude that interchanging the terms, when the count in all other ways identifies the charge as sexual assault in the second degree and the defendant is fully aware of the charge, is not sufficient to render the count defective. *See State v. Neal,* 179 W.Va. 705, 711, 371 S.E.2d 633, 639 (1988) (finding that the defendant was fully aware of the charge against him, and that the indictment was sufficient in spite of the defendant's contention that one of the counts contained the statutory elements of two different offenses); *State v. Neary,* 179 W.Va. 115, 121, 365 S.E.2d 395, 401 (1987) (holding the failure to use the words "pecuniary interest" in a charge under W.Va.Code, 61–10–15 (1977), entitled "[p]ecuniary interest of county and district officers, teachers and school officials in contracts; exceptions; offering or giving compensation; penalties," was not sufficient to invalidate the indictment when "there can be no doubt that the defendant was fully informed of the particular offense charged and the nature of his interest."); *see also State v. Mullins,* 181 W.Va. 415, 418–19, 383 S.E.2d 47, 50–51 (1989) (stating that we require indictments to "*substantially* follow" statutory language, although they need "not strictly spell out statutory requirements[.]" (Emphasis in original)).

For these same reasons, we conclude that the indictment was sufficient to prevent the defendant from being prosecuted again for the same offense. The defendant argues that nothing prohibits another prosecutor from concluding that he was convicted of sexual abuse in the first degree and, based upon the same evidence, seeking a second conviction for sexual assault in the second degree. However, as previously discussed, we find the indictment was sufficient to show the defendant was charged with sexual assault in the second degree. Therefore, we find the indictment provided the defendant with enough information to allow him to plead a bar to further prosecution for the offense.

## V.

## ADMISSIBILITY OF EVIDENCE

■ The defendant complains that the circuit court erred by allowing the assistant prosecuting attorney to question a witness about Rita being removed from the defendant's home as a result of a prior court proceeding. The witness, the defendant's sister, was called by the defendant to testify about his relationship with his children and his reputation in the community. On cross-examination, the assistant prosecuting attorney questioned the witness as to whether the defendant had a good relationship with his children and included the fact that Rita was removed from his home after a court proceeding for child abuse and neglect. The defendant made no objections to this line of inquiry.

On redirect, the defendant's attorney[20] said to the witness: "Mr. King [the assistant prosecuting attorney] asked you a question concerning Rita [G.H.] being removed from the home. Do you understand that she was removed from the home because of allegations?" The witness responded affirmatively and the defendant's attorney did not ask any more questions. Immediately thereafter, the assistant prosecuting attorney asked the witness if she understood that Rita "was removed from the home by a legal, findings of fact and conclusions of the law by a circuit judge who—" The defendant's counsel objected to the question before it was completed and claimed the assistant prosecuting attorney was misleading the jury to believe that the prior proceeding somehow proved the defendant was guilty of something. The record then reads as follows:

"The COURT: He's saying why she was removed from the home. That's overruled.

"Mr. KING: He [the defendant's attorney] said allegations.

"The COURT: Is there a court order saying she's removed from the home?

"(8) 'Sexual intrusion' means any act between persons not married to each other involving penetration, however slight, of the female sex organ or of the anus of any person by an object for the purpose of degrading or hu-

miliating the person so penetrated or for gratifying the sexual desire of either party."

**20.** The defendant is represented by different counsel on appeal.

"Mr. KING: Certainly.

"The COURT: Well, then, that's it."

The assistant prosecuting attorney then continued by questioning the witness about whether she participated in the other proceeding.

The defendant asserts that the objection should have been sustained because evidence of a prior proceeding was extremely prejudicial and had no probative value. Rule 403 of the *West Virginia Rules of Evidence* (1985) provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." [21] In Syllabus Point 4 of *Gable v. Kroger Co.*, 186 W.Va. 62, 410 S.E.2d 701 (1991), we held:

> "Rule 402 and Rule 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

We further stated in Syllabus Point 2 of *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983):

> " 'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W.Va. 639, [643,] 301 S.E.2d 596, 599 (1983)."

It was well established in the record before this witness even testified that Rita was removed from the home and placed under the protection of the State. Moreover, the defendant never objected to the issue when it was first raised on cross-examination and actually proceeded to question the witness about the matter on redirect. It was not until the assistant prosecuting attorney attempted to clarify defense counsel's use of the word "allegations" that an objection was

raised. Under these facts and under the foregoing standards, we find no merit in the defendant's contention that the circuit court erred by overruling the objection.

## VI.

## INSUFFICIENT EVIDENCE

The defendant contends that the uncorroborated testimony of the victim at trial was inherently untrustworthy because it was substantially different from earlier statements she gave to the police. The defendant also presented evidence at trial, and asserts on appeal, that Rita fabricated the allegations because she was angry at her parents for not allowing her to participate in the high school band. After reviewing the entire record, we find there was sufficient evidence to sustain the convictions.

At the outset, we maintain our position that a defendant can be found guilty of a sexually-related crime based upon the uncorroborated testimony of a victim. In Syllabus Point 5 of *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981), we stated:

> "A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury."

We also reiterated our general position on the sufficiency of evidence for criminal cases in Syllabus Point 10 of *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992):

> " 'In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence

---

21. Rule 402 of the West Virginia Rules of Evidence (1985), relating to relevancy and the admissibility of evidence, states: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of West Virginia, these rules, or other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible."

was manifestly inadequate and that consequent injustice has been done.' Syllabus Point 1, *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978)."

It was within the jury's discretion to decide whether to believe Rita's account of the events. The defendant pointed out to the jury inconsistencies between her statements and her testimony and, in fact, during closing argument, defense counsel actually called the victim "a pathetic, habitual liar who doesn't know the truth and the falsehoods any more." It was within the jury's prerogative to decide whether she was telling the truth, or whether she made up the story because she was not permitted to participate in the band program.

The defendant also asserts it is unbelievable that Rita could recall the May 1990 incident of sexual intercourse in her February 1991 statement, but fail to mention it in her May 1990 statement that was given the day after the act allegedly occurred. The defendant notes that, in fact, Rita said in her May 1990 statement that her father only had "penetrated" her once and it happened when she was ten or eleven years old. When viewed in a light most favorable to the prosecution, this inconsistency along with other inconsistencies mentioned by the defendant do not make the evidence so manifestly inadequate as to warrant setting aside the verdict, nor do they make Rita's testimony "inherently incredible."

## VII.

### CUMULATIVE ERROR

■ We reject the defendant's final argument to apply the cumulative error doctrine. In Syllabus Point 5 of *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972), we said:

> "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error."

We do not find any trial error·in the present case, either individually or cumulatively, that prevented the defendant from receiving a fair trial.

## VIII.

### CONCLUSION

Thus, to summarize our earlier discussion in Part II, *supra,* concerning *ex post facto* principles, we find that counts two and three for second-degree sexual assault and sexual abuse by a custodian violate *ex post facto* principles because the crimes were not defined as charged when the 1984 or 1985 incident occurred. We give the State the right to retry the defendant on count two for second-degree sexual assault under the statute as it existed in 1984 and 1985. The defendant cannot be retried on count three because the crime of sexual abuse by a custodian did not exist in 1984 or 1985.

With regard to sentencing, the convictions for incest in count one, involving the 1984 or 1985 incident, and count four, regarding the 1990 event, are reversed because the circuit court violated *ex post facto* principles by using the enhanced sentence under a 1991 amendment to the incest statute, W.Va.Code, 61–8–12. The same *ex post facto* violations occurred as to the sentencing for count five for the conviction for second-degree sexual assault under W.Va. Code, 61–8B–4, and for count six for the conviction of sexual abuse by a custodian under W.Va.Code, 61–8D–5(a), because the circuit court used the 1991 amendments that enhanced the penalties under these statutes. On remand, these sentences must be adjusted to the penalties existing at the time the crimes were committed.

For the foregoing reasons, we hereby affirm, in part, and reverse, in part, the final order of the Circuit Court of McDowell County, and remand this case for further proceedings consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded.