445 S.E.2d 189

**Sharon ALONZO, Plaintiff Below, Appellee,**

v.

**JACQUELINE F., Adult, Rick F., Adult, Defendants Below, Appellees.**

**Phillip F., Infant, and the West Virginia Department of Health and Human Resources, Defendants Below, Appellants.**

**Mark E. Gorman and Sherry B. Gorman, Intervenor Appellees.**

No. 22181.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1994.

Decided May 20, 1994.

Leah R. Taylor, Asst. Pros. Atty., for Jackson County, Ripley, for appellee Sharon Alonzo.

Daniel C. Taylor, Ripley, for appellant Phillip F., Infant.

David R. Karr, Ravenswood, Anthony F. Serreno, Charleston, for intervenor appellees Mark E. Gorman and Sherry B. Gorman.

Mark Sergent, Spencer, for appellee Jacqueline F.

Lee F. Benford, II, Ravenswood, for appellee Rick F.

Thomas W. Woodward, Deputy Atty. Gen., Charleston, for appellant the W.Va. Dept. of Health and Human Resources.

MILLER, Justice:

■ In this appeal, we are asked to determine if the natural mother of a young child can sign a consent to adopt after a petition for abuse and neglect has been filed against her and the circuit court has ordered temporary custody of the child placed in the Department of Health and Human Resources (Department).[1]

The salient facts are as follows. On February 11, 1992, the Department filed a petition against Jacqueline F. and Rick F. It asked that their three-month-old child named Phillip F. be removed immediately from their home. This petition was based on allegations of abuse and neglect and the fact that the child was in imminent danger of physical harm. The circuit court on the same date ordered the child's removal and gave temporary custody to the Department.

An adjudicatory hearing was held on March 13, 1992, with an additional hearing being held on March 30, 1992. The circuit court, at this latter hearing, entered an order finding the child to be neglected and abused. It ordered that temporary custody remain with the Department and that the mother be given a psychiatric evaluation. The mother also was given a six-month noncustodial improvement period. A further hearing was set for May 4, 1992.

At that hearing, the Department filed a family case plan. The Department had placed temporary custody of the child with James and Alphia Ihle, who were approved foster parents. Mark E. and Sherry B. Gorman appeared by counsel at that hearing and asked leave to intervene. In March of 1991, Mr. and Mrs. Gorman adopted another child of Jacqueline F. They now sought to adopt Phillip. The circuit court allowed Mr. and Mrs. Gorman the right to attend future hearings, but advised that they were not to be considered as parties.

Two further status hearings were held with regard to the mother's improvement period. At the first hearing on October 5, 1992, the Department showed that the mother had not made any significant progress. However, the mother did express the desire to make a more diligent effort, and the circuit court extended the improvement period for three months. The second status hearing was held on February 1, 1993. At that time, Mr. and Mrs. Ihle appeared by counsel and requested the right to intervene as they desired permanent guardianship of Phillip.

At a hearing on June 7, 1993, the Department presented evidence that the mother's improvement period was unsuccessful. Its recommendation was that Phillip's reunification with his natural parents would not be successful. The Department also recommended that permanent custody be placed with the Department in order that it might arrange for Phillip's adoption. The mother offered evidence to dispute the Department's contention that her improvement period was not satisfactorily completed. She also testified that if she could not regain custody of Phillip, she desired that Mr. and Mrs. Gorman be given custody.

The matter was continued to June 24, 1993, as Mr. and Mrs. Gorman's counsel indicated he wished to offer evidence that the mother had satisfactorily completed her improvement period. At this hearing, Mr. and Mrs. Gorman's attorney produced a written consent to adopt executed by the mother permitting Mr. and Mrs. Gorman to adopt Phillip. The circuit court decided that the mother's consent to adopt extinguished her parental rights. It held that this action mooted the question of whether she had satisfactorily completed her improvement period. The circuit court did not rule on Mr. and Mrs. Gorman's motion that Phillip be placed with them as foster parents pending his adoption.

At a subsequent hearing on September 10, 1993, the natural father of Phillip filed a consent to terminate his parental rights as authorized by W.Va.Code, 49–6–7 (1977).[2]

1. This case is styled in the name of Sharon Alonzo who is the social worker for the Department that filed the initial petition in the circuit court. Due to the sensitive nature of the allegations, we use initials instead of the last names of the parents and the child. *See State v. George*

*W.H.*, 190 W.Va. 558, 562 n. 1, 439 S.E.2d 423, 427 n. 1 (1993).

2. W.Va.Code, 49–6–7, provides: "An agreement of a natural parent in termination of parental

The circuit court ruled that this termination vested the father's rights as the natural parent with the Department. The Department requested that it be given permanent custody of Phillip with leave to place the child for adoption. The circuit court declined to do this and awarded only temporary custody. It ruled that Mr. and Mrs. Gorman had an interest in the matter because of the mother's consent to adopt, but the Gormans were not parties to the proceedings. Therefore, the case was dismissed, and this appeal followed.

The Department argues that the mother's consent to adopt should be treated as a consensual termination of parental rights under W.Va.Code, 49–6–7.[3] This section is part of an article dealing with procedures for parental child abuse and neglect cases in W.Va. Code, 49–6–1, *et seq.* It is apparent that this type of an agreement placed as it is in the abuse and neglect article primarily is designed to permit a parent charged with abuse and neglect to surrender his parental rights to the Department rather than contest the charges. This type of termination was done by the natural father in this case who surrendered his parental rights to the Department.

The mother's consent to the adoption of Phillip by the Gormans must be viewed as a consent to adopt under W.Va.Code, 48–4–3 (1985), which relates to procedures for the adoption of a child. Under W.Va.Code, 48–4–3(a), the consent of the mother and legal or determined father to adopt the child ordinarily is required. In W.Va.Code, 48–4–3(c), it is recognized that parental consent is not required if they "have been deprived of the custody of the person of such child by law[.]"[4] This section goes on to enumerate the persons who may give such consent. The logical inference is that where custody has been removed by law from a parent, consent is not only unnecessary, but legally insufficient. In this case, custody of Phillip was granted to the Department at the time of the filing of the abuse and neglect petition, which was before the consent to adopt was signed.

Of perhaps greater significance is the following language in W.Va.Code, 49–6–5(a)(6), which deals with the disposition by a court of a case involving a neglected or abused child and provides, in part: "No adoption of a child shall take place until all proceedings for termination of parental rights under this article and appeals thereof are final." This language is designed to forestall any attempt by anyone to obtain custody of an abused or neglected child through adoption until there is a final disposition of the abuse and neglect case by the circuit court. Thus, the consent to adopt given by Jacqueline F. is a nugatory act until the final disposition of this case.

From the foregoing provisions, we conclude that where a child abuse and neglect proceeding has been filed against a parent, such parent may not confer any rights on a third party by executing a consent to adopt during the pendency of the proceeding.

■ In this case, the circuit court was correct in determining that the mother's rights to the child were terminated. This termination was not because of the consent to adopt, but because of the evidence from the Department that the mother could not demonstrate the capacity to correct the conditions that led to the initial abuse and neglect of Phillip.

■ On remand, the circuit court should place permanent custody of Phillip with the Department. It should direct the Department to consider whether the best interests of Phillip would be served by permitting him to be adopted by the foster parents, the

---

rights shall be valid if made by a duly acknowledged writing, and entered into under circumstances free from duress and fraud."

3. For the text of W.Va.Code, 49–6–7, see note 2, *supra.*

4. W.Va.Code, 48–4–3(c), states:
"If all persons entitled to parental rights of the child sought to be adopted are deceased or have been deprived of the custody of the person of such child by law, then and in such case, the written consent, acknowledged as aforesaid, of the legal guardian of such child or those having at the time the legal custody of the child shall be obtained and so presented, and if there be no legal guardian nor any person having the legal custody of the child, then such consent must be obtained from some discreet and suitable person appointed by the court or judge thereof to act as the next friend of such child in the adoption proceedings."

Ihles, or to be adopted by the Gormans who previously adopted his sibling.

In the event that the Department determines that permanent placement with the Ihles is in the best interests of Phillip, an additional issue which should be considered is the right of Phillip to continued association with his sibling who was previously adopted by the Gormans. As this Court first recognized in *Honaker v. Burnside,* 182 W.Va. 448, 452, 388 S.E.2d 322, 325 (1989), the need for "continued contact with other significant figures in ... [a child's] life," may require the establishment of visitation rights between a child and other persons who qualify as "significant figures." (Footnote omitted). We explained that " '[v]isitation is not solely for the benefit of the adult visitor but is aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well being by permitting partial continuation of an earlier established close relationship.' " 182 W.Va. at 452, 388 S.E.2d at 325, *quoting Looper v. McManus,* 581 P.2d 487, 488 (Okla.Ct.App. 1978).

We expanded on these concepts in *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991), by holding in Syllabus Point 4:

"In cases where there is a termination of parental rights, the circuit court should consider whether continued association with siblings in other placements is in the child's best interests, and if such continued association is in such child's best interests, the court should enter an appropriate order to preserve the rights of siblings to continued contact."

Similarly, in the event that Phillip and his sibling are not placed with the same family, the circuit court should consider whether it would be in the best interests of Phillip to establish and order a right to visitation between Phillip and his sibling in the interest of facilitating continued association between these two siblings.

Obviously, this is not an easy task, especially in a situation such as this where two competing sets of parents have strong emotional feelings invested in this child. But in such event, the Department and these parents should struggle mightily to put aside all rancor and work to foster a continued relationship between these children, with the Department providing continued services such as counseling to help facilitate this goal.

For the foregoing reasons, we affirm, in part, and reverse, in part, the final order of the Circuit Court of Jackson County and remand this case for further proceedings consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded.