566 S.E.2d 221

**In re TESSLA N.M. and Sarah S.B.**

No. 29964.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 9, 2002.
Decided June 13, 2002.

Steven T. Cook, Esq., Stapleton Law Offices, Huntington, for Bonita W., Mother.

Darrell V. McGraw, Jr., Esq., Attorney General, Charleston, Teresa Brown, Esq., Assistant Attorney General, Teays, for WV DH & HR.

MAYNARD, Justice:

On November 17, 2000, during a status review hearing in the Circuit Court of Wayne County, the appellant, Bonita W., voluntarily relinquished her parental rights to her daughters, Sarah S.B. and Tessla N.M. The appellant subsequently filed a motion seeking to set aside the voluntary termination. The circuit court denied the motion. She alleges the court erred because the oral relinquishment was not verified in writing and was made under duress. We find no error.

## I.

### FACTS

Sarah S.B. is the daughter of Bonita W. and Dennis G. and is currently seven years old. Tessla N.M. is the daughter of Bonita W. and Ricky M. and is currently five years old.[1] The West Virginia Department of Health and Human Resources (DHHR) has provided assistance to the appellant since Sarah was approximately eight months old. On May 2, 2000, Sarah and Tessla were referred to DHHR because both girls alleged that their mother's husband, Tester Wayne W., sexually abused them. The girls also reported that their mother sexually and physically abused them.

On May 16, 2000, Deborah Roach, a social worker for DHHR, filed a petition in the interest of the children. The petition stated that Sarah and Tessla reported that they had been sexually abused by Wayne W.; that both girls were infested with head lice; that the home was dirty with dog feces on the floor; that one child was observed eating food off of the porch floor; and that Sarah must repeat kindergarten even though she is of average intelligence because she missed over forty days of school. The petition stated that the appellant took the girls to Wayne Health Services to see a doctor regarding sexual abuse but failed to take them to the sexual abuse examinations which Wayne Health Services scheduled in Huntington. The appellant also failed to bring the girls to interviews that were scheduled with DHHR. When DHHR suggested that a Child Protective Services (CPS) case might be opened to protect the children, the appellant threatened to take the children to visit her father in Ohio and not return to West Virginia. This was a real concern for DHHR because the appellant moved to Virginia once before while a CPS case was open. The children also indicated that Wayne W. would move with them.[2]

DHHR petitioned for emergency removal of the children from the home. On May 22, 2000, the circuit court determined the children were neglected or abused and set the matter for preliminary hearing on May 26, 2000. The order does not specify the physical placement of the children at that time.[3] Counsel was appointed to represent the appellant and that representation has continued throughout these proceedings. At the close of the May 26, 2000 hearing, the court found "by clear and convincing proof that the children are neglected or abused by reason of the following facts: (1) That the children may have been touched inappropriately; and (2) that there are severe problems in the cleanliness and care of the children." DHHR retained temporary legal custody of the children who were to remain in their

---

1. Bonita W. recently gave birth to a third child who is not involved in this appeal.

2. During oral argument, the appellant's counsel informed the Court that the appellant divorced Wayne W. and moved in with her mother. We note that the record indicates that the appellant's mother was deemed unsuitable as a guardian for the children due to health concerns and inability to care for the children.

3. Dr. Melody Cyrus examined Sarah on May 24, 2000. Her report states that Sarah was living with her paternal grandmother, Patricia G.

present placement; the appellant was granted supervised visitation; Dennis G.'s schedule of visitation continued; Ricky M. would have no contact with the children until he appeared before the court; and Wayne W. was prohibited from having any contact with the children.

Following a review hearing which was held on July 6, 2000, the court directed DHHR to develop a family case plan and ordered the appellant to fully comply with the plan. The appellant subsequently filed a motion for an improvement period. The dispositional hearing was held on August 11, 2000 at which time the court found that the appellant "has recently begun to be minimally compliant with [DHHR]." Consequently, she was granted a post-adjudicatory improvement period of six months. DHHR retained legal custody of the children and Patricia G., Dennis G.'s mother, was granted physical custody of both girls.

A status review hearing was held on November 17, 2000. At the beginning of the hearing, Steven Cook, the appellant's attorney, made a proffer to the court stating that the appellant was considering voluntarily relinquishing her parental rights. During the hearing, Mr. Cook questioned the appellant. He specifically asked her if she contacted him "several months ago ... about considering a relinquishment of your rights." She answered, "Yes, I did." He then asked, "But as of today's date you have decided to bring this to the Judge's attention and you would like to voluntarily relinquish; is that correct?" She answered, "Yes." The appellant explained her reasoning to the court. She stated that the girls were doing well with Patricia G. and seemed happy. She believed the girls were confused and hurting from being "pull[ed] back and forth not knowing and wondering[,]" and she thought the time had come to stop the uncertainty. She stated that she wanted "them to be able to make a transition and go ahead and hopefully be happy[.]"

Mr. Cook questioned the appellant extensively regarding whether she was making this decision "of [her] own free will[ ]" and whether she understood that she did not have to voluntarily relinquish her rights. She unequivocally stated that she understood what she was doing and that she was making the decision of her own free will. As to post-termination visitation, the appellant stated that she understood the girls could see her if they so chose. She also understood that she would have no actual right to see the children and could not force visitation. Her attorney finally asked, "You have had a long time to think about this; correct?" The appellant answered, "Yes. I have had seven months and two days to think about this."

The court accepted the voluntary relinquishment by stating,

> I believe the mother has made a reasoned and voluntary decision based on the fact that she has recognized what she believes to be in the best interest of the children and has voluntarily relinquished her parental rights. I'm going to accept the voluntary relinquishment. Her parental rights will be terminated.

The improvement period and the appellant's parental rights were terminated in the court's order which was entered on December 22, 2000. Thereafter, on February 13, 2001, the appellant filed a motion seeking to set aside the oral relinquishment of her parental rights. In support of her motion, she argued that an agreement to terminate parental rights cannot be valid unless it is made by a duly acknowledged writing.[4] She stated further that she did not wish to relinquish her rights at that time; therefore, any termination would not be voluntary. On April 13, 2001, the court entered an order which terminated Ricky M.'s parental rights to Tessla N.M. due to abandonment; ordered DHHR to determine whether post-termination visitation would take place between the appellant and the children; and denied the appellant's motion to revoke her voluntary relinquishment of parental rights. It is from this order that the appellant appeals.

4. W.Va.Code § 49–6–7 (1977) states, "An agreement of a natural parent in termination of parental rights shall be valid if made by a duly acknowledged writing, and entered into under circumstances free from duress and fraud."

## II.

### STANDARD OF REVIEW

 This appeal presents a question of law involving interpretation of a statute. Accordingly, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Moreover,

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

Syllabus Point 1, *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996).

### III.

### DISCUSSION

On appeal, the appellant contends the circuit court erred by terminating her parental rights pursuant to an oral relinquishment when W.Va.Code § 49–6–7 requires a duly acknowledged writing. She also believes the voluntary relinquishment should be set aside because the decision was made under duress. DHHR argues that the statute does not contemplate that a parent may only relinquish parental rights in writing and this becomes clear when the statute is read together with the Rules of Procedure for Child Abuse and Neglect. DHHR also contends there is no evidence to support the appellant's belated claim that she was compelled to relinquish her rights under duress. We agree.

The first issue which we must resolve is whether an oral voluntary relinquishment of parental rights is valid when the relinquishment is made in open court on the record but is not followed up with a duly acknowledged writing. In the case *sub judice*, the appellant admits she voluntarily terminated her rights to both girls on the record in open court. There is no question the voluntary relinquishment occurred after extensive questioning by the appellant's attorney. She, nonetheless, argues on appeal that because of duress and because she was later informed the State would not pursue sexual assault charges against Wayne W., she did not intend to voluntarily terminate her rights on November 17, 2000. She believes this is borne out by the fact that no duly acknowledged writing exists.

The appellant's argument is confusing. In the brief she submitted on appeal, the appellant admits that she voluntarily relinquished her rights but at the same time she argues "that she never intended to relinquish her parental rights." She obviously cannot have it both ways. It appears, from reading her brief and the record submitted on appeal, that the appellant fully intended to voluntarily relinquish her rights during the November 17, 2000 court hearing but later changed her mind. Three months passed between the voluntary termination and the date on which the appellant filed her motion seeking to set aside the voluntary relinquishment. She relates that at some point during this time she understood the State would not pursue sexual abuse charges against Wayne W. and indicates that she changed her mind at that time. However, that is not what she argues; instead, she tries to convince this Court that she did not intend to do what she did during the November 17, 2000 hearing. The transcript of the hearing suggests otherwise.

At the beginning of the hearing, the appellant's attorney [5] made a proffer to the court. He stated, "I will just proffer that she is considering a voluntary relinquishment and we would like to put some things on the record." Her attorney then questioned the appellant regarding whether she wanted to relinquish her rights and whether the relinquishment was voluntary. He also had the appellant explain her reasoning to the court. The court accepted the relinquishment on the record in open court and subsequently en-

---

**5.** We note that the attorney who questioned the appellant in the November 17, 2000 hearing is the same attorney who represents her on appeal.

tered an order stating that "the Court is of the opinion that the least restrictive alternative which is in the best interest of the children in this case is to accept the voluntary relinquishment of parental rights by Bonita W. and to terminate such parental rights." Given this set of facts, we cannot say the circuit court abused its discretion by terminating the appellant's rights and by refusing to set the voluntary termination aside. The remaining question is whether the termination is valid minus a written agreement.

When one reconciles W.Va.Code § 49–6–7 with the West Virginia Rules of Procedure for Child Abuse and Neglect,[6] it becomes obvious that a voluntary relinquishment made on the record in open court is valid regardless of whether the oral relinquishment is followed by a duly acknowledged writing. Rule 35(a)(1) contains the procedure whereby rights may be terminated when the parent(s) is/are present in court and has/have *not* signed a relinquishment of parental rights; Rule 35(a)(3) contains the procedure whereby rights may be terminated when the parent(s) is/are present in court and has/have voluntarily relinquished parental rights in writing. If rights could only be terminated by a signed agreement, then Rule 35(a)(1) would be unnecessary. Either way, the circuit court must determine whether the parent understands the consequences of terminating his or her rights, is aware of less drastic alternatives, and has been informed of the right to a hearing and to representation by counsel.

■ In the case at bar, the appellant was present in a court hearing and was represented by counsel; she fully understood the alternatives which the department might pursue; and she stated that she understood the consequences of voluntarily relinquishing her rights. The requirements of the rule were satisfied. A signed agreement was not required under these circumstances; we will discuss, *infra*, when signed agreements are required. We hold that, pursuant to Rule 35(a)(1) of the Rules of Procedure for Child Abuse and Neglect, an oral voluntary relinquishment of parental rights is valid if the parent who chooses to relinquish is present in court and the court determines that the parent understands the consequences of a termination of parental rights, is aware of less drastic alternatives than termination, and is informed of the right to a hearing and to representation by counsel.

■ Voluntary relinquishments do not always take place in a court room. Parents may be in an extrajudicial setting when they choose to terminate their rights. For instance, a parent may choose to terminate his or her rights when he or she is in a DHHR office or when he or she is involved in a private adoption proceeding. It is these situations to which W.Va.Code § 49–6–7 applies, and these relinquishments are valid only "if made by a duly acknowledged writing[.]"

■■ In contrast to what he now argues, the transcript of the February 9, 2001 interim judicial review hearing demonstrates that appellant's counsel agreed with the court that an oral relinquishment is valid when a parent who chooses to terminate his or her rights is present before the court. The following colloquy took place:

THE COURT: The way I read that [W.Va.Code § 49–6–7] is if the parent doesn't appear here, they may enter a valid voluntary relinquishment signed and notarized and presented in court. It's val-

---

**6.** Rules 35(a)(1) and (3) of the Rules of Procedure for Child Abuse and Neglect read as follows:

(a) *Uncontested termination of parental rights.*—If a parent voluntarily relinquishes parental rights or fails to contest termination of parental rights, the court shall make the following inquiry at the disposition hearing:

(1) If the parent(s) is/are present at the hearing but fail(s) to contest termination of parental rights, the court shall determine whether the parent(s) fully understand(s) the consequences of a termination of parental rights,

is/are aware of possible less drastic alternatives than termination, and was/were informed of the right to a hearing and to representation by counsel.

(3) If the parent(s) is/are present in court and voluntarily has/have signed a relinquishment of parental rights, the court shall determine whether the parent(s) fully understand(s) the consequences of a termination of parental rights, is/are aware of possible less drastic alternatives than termination, and was/were informed of the right to a hearing and to representation by counsel.

id. It can be a valid voluntary relinquishment without being present in court. She was present in court.

MR. STAPLETON: That is correct, Your Honor. We do not intend to mislead the Court in any way. The Court inquired of her and she said several times that she did consent to it.

We agree with the circuit court that parents who relinquish their parental rights outside of a court setting must submit a signed and notarized agreement in order for the relinquishment to be valid. We, therefore, hold that an oral relinquishment of parental rights made on the record in open court is valid regardless of whether the parent who chooses to terminate his or her rights executes and submits a duly acknowledged writing pursuant to W.Va.Code § 49-6-7 (1977).[7] Of course, all agreements to terminate parental rights must be made free from duress and fraud.

■ That is the appellant's final complaint. She contends that she agreed to terminate her rights under duress and, as a result, the relinquishment cannot be accepted by the court as valid. In the brief she submitted on appeal she states that the duress amounted to a DHHR worker explaining to her that relinquishment would be in the best interests of the children and telling her that she would be able to visit the children through a post-termination visitation plan. The transcript of the hearing does not substantiate this complaint.

During the hearing, the appellant specifically stated that she wished to voluntarily relinquish; that she was relinquishing of her own free will; that she first approached her attorney to suggest voluntary relinquishment; and that she understood the decision regarding post-termination visitation would be left up to the children and DHHR. Three months later the appellant's attorney represented to the court for the first time that the appellant had changed her mind and did "not

desire to have her parental rights terminated." He asked the court to set aside the voluntary termination. The court reviewed the circumstances under which the relinquishment took place and considered the best interests of the children. The motion to revoke was denied. Under these circumstances, we cannot say the court abused its discretion by "deny[ing] [the appellant] the right to withdraw her voluntary relinquishment."

The appellant chose to voluntarily relinquish her parental rights on the record in open court. The court correctly determined the relinquishment was valid minus a notarized written agreement. The appellant understood the consequences of termination; her attorney assured her that he would "vigorously defend" against termination and fight for less drastic alternatives; and she was represented by counsel during these entire proceedings. The court fully complied with the requirements of the statute and the rules.

For the foregoing reasons, the order of the circuit court which denied the appellant's motion to set aside her voluntary termination of parental rights to Sarah S.B. and Tessla N.M. is affirmed.

Affirmed.

---

[7]. This ruling conforms with our recent decision in the case of *In re: James G. and Emmett M.L., III*, 211 W.Va. 339, 566 S.E.2d 226 (2002). While the instant opinion deals with an oral voluntary relinquishment made in open court which the parent later wished to retract, the *James G.* opinion deals with a written agreement.

We hold in *James G.* that the consent of the DHHR is not required for a parent's voluntary relinquishment of parental rights to be valid, provided the requirements of W.Va.Code § 49-6-7 (1977) are met and the provisions of the Rules of Procedure for Child Abuse and Neglect are satisfied.