566 S.E.2d 226

**In re JAMES G. and Emmett M.L., III.**

**No. 30039.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2002.

Decided June 13, 2002.

---

Michael W. Blake, Beckley, for Victoria M., Mother, Appellant.

Darrell V. McGraw, Jr., Attorney General, Tanya L. Godfrey, Assistant Attorney General, Charleston, for West Virginia Department of Health and Human Resources, Appellee.

Anthony Sparacino, Guardian ad Litem, Beckley, for James G. and Emmett M.L., III Appellees.

Wilbert A. Payne, Beckley, for Emmett M.L., Jr., Father.

James F. Parkulo, Anderson, Parkulo, Stansbury and Associates, Beckley, for James G., Father.

McGRAW, Justice:

The West Virginia Department of Health and Human Services (the "Department") filed a Petition for Finding of Abuse and/or Neglect and/or Abandonment against a mother, eventually seeking the involuntary termination of her parental rights with respect to her two children. As the termination proceedings neared their end, the mother offered to execute a voluntary relinquishment of her parental rights, to which the Department refused to agree. The lower court held that because the Department did not agree to the mother's voluntary relinquishment, the court was obliged to rule on the petition and to terminate her rights involuntarily or not at all. The mother appeals, arguing that the Department's consent was not required for the court to consider her voluntary relinquishment. She argues that the court should have approved her voluntary relinquishment, and not proceeded to an involuntary termination. We agree with the mother, in part, and therefore reverse the decision of the lower court.

## I.

## BACKGROUND

Victoria M. is the biological mother of the two children who are the subject of this action, Emmett M.L. and James G. Child James is the older of the two children, born in July 1996, and is the child of Victoria M. and James, Sr. Child Emmett was born later, in July of 1999, and is the biological child of Victoria M. and Emmett Sr.[1] During most of the time periods at issue in this case, Victoria M. and the children lived with her boyfriend, Emmett Sr.

The family has had frequent contact with the criminal justice and child welfare systems. The West Virginia Department of Health and Human Services (the "Department") is the state agency with ultimate responsibility for child abuse and neglect cases. Within the Department, the Division of Child Protective Services ("CPS") is responsible for investigating allegations of child abuse or neglect. W.Va.Code § 49–6A–9 (2001). During 1997, CPS received a referral that James, who had been born prematurely, was not being taken to his scheduled medical appointments by his mother. Later, in January 1999, CPS received a referral that James, then two, had cigarette burns on the palms of both hands, a cigarette burn on his chest, various bruises on his head and cheek, and burns on his genitalia. Apparently the Department attempted to provide the family with parenting and behavior management services, but these efforts failed, in part because James moved temporarily to his maternal grandmother's house in Ohio, and Emmett Sr. was jailed for domestic battery of Victoria.

In July 1999, CPS received another referral, this one stating that Victoria had spanked James with a fly swatter, leaving a bruise on the child's leg and buttocks. As a result, the Department filed a "Petition for Finding of Abuse and/or Neglect and/or Abandonment" (a "petition") on behalf of both children on July 28, 1999, in the Circuit Court of Raleigh County. W. Va.Code § 49–1–1 et seq. provides for a preliminary hearing to be held shortly after the filing of a petition, followed later by an adjudicatory hearing, which in turn is followed by a disposition hearing. The court may allow improvement periods for the parents at various times during the proceedings.

In the instant case, the lower court held the preliminary hearing on August 19, 1999, at which time the parties informed the court of an agreed upon three-month improvement period during which the mother would attend parenting classes and behavior modification counseling to help control her anger, and would have weekly supervised visitation with the children.[2]

The court held an adjudicatory hearing on January 21, 2000. The court found that Victoria had not complied with the agreement, that the Department's evidence that James had suffered abuse was uncontested, and that the allegations in the petition were supported by clear and convincing evidence. The court then terminated Victoria's parental rights to both children, and left legal and physical custody of the children with the Department. The court left unresolved the question of the parental rights of the respective fathers, pending further investigation.

As the case proceeded, boyfriend Emmett Sr., asked for a paternity test, which established that he was the father of child Emmett, and the court ordered a home study of James Sr., father of child James. Also during this time, Victoria M. moved the court to reconsider its termination of her parental rights. In April 2000, the court reconsidered its January ruling and granted Victoria and her boyfriend Emmett an improvement period, during which they had the opportunity to demonstrate that conditions in the home had improved.

Apparently Victoria and Emmett were unable to comply with the improvement plan,

---

**1.** As we have done in the past in domestic and juvenile cases involving sensitive facts, we do not use the last names of the parties. See State v. George W.H., 190 W.Va. 558, 562 n. 1, 439 S.E.2d 423, 427 n. 1 (1993). Also, for ease of reading we omit most initials and use the suffix "Sr." to differentiate father from child, though the parties .may not actually use such suffix.

**2.** It appears that physical custody of the children remained with the Department.

and the Department renewed its request for the permanent involuntary termination of Victoria's and Emmett's parental rights. The court held a final disposition hearing on February 1, 2001, some eighteen months after the Department first filed a petition. At this hearing, at which the court was prepared to order the involuntary termination of the parental rights of Emmett and Victoria, Victoria tendered a signed *voluntary* relinquishment of her parental rights.

The court refused to accept and ratify the voluntary relinquishment, finding that this offer was in the nature of a settlement to which the Department did not agree, and finding further that the Court had no power to force the Department to agree to such a settlement. By order dated February 1 and filed April 27, 2001, the court involuntarily and permanently terminated Victoria's parental rights as to both children and Emmett's parental rights as to child Emmett. The order granted custody of both children to the Department, but required the Department to attempt to unify James with his natural father, James Sr. Finally, the order stated that "the Department shall not be required to accept the voluntary relinquishment of [Victoria] the respondent mother."

Only Victoria appeals, and in her appeal she does not ask that her parental rights be reinstated, but claims only that the court erred in not accepting her offer of a voluntary relinquishment. She argues that there is no legal authority whereby during the pendency of an abuse and neglect case, the Department of Health and Human Services, or the circuit court may reject a parent's offer to voluntarily relinquish his or her parental rights. Because we partially agree with her on this limited point, we must reverse the decision of the lower court.

## II.

### STANDARD OF REVIEW

We have often explained the standard of review used by this Court in cases such as this: "For appeals resulting from abuse and neglect proceedings, such as the case *sub judice*, we employ a compound standard of review: conclusions of law are sub-

ject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." *In re Emily*, 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000). Or, as we explained at greater length in another case:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). In the instant case, because we are only asked to consider a question of law, our review is simply *de novo*.

## III.

### DISCUSSION

The basis of Victoria's argument is that there is no authority that would allow the Department, or the circuit court, to refuse her offer to voluntarily relinquish her rights. The Department argues that there is no authority that requires it or the court to accept such a relinquishment. Furthermore, the Department suggests that Victoria only made the voluntary offer because she knew she would lose these children, but wished to limit the Department's ability to take action against her should she later have another child.

Our law provides for the voluntary termination of parental rights, but places certain limits on such an action: "An agreement of a natural parent in termination of parental

rights shall be valid if made by a duly acknowledged writing, and entered into under circumstances free from duress and fraud." W. Va.Code § 49–6–7 (1977). The Rules of Procedure for Child Abuse and Neglect Proceedings place other requirements on any such voluntary termination. First, the Rules demand that any stipulation made by a party in an abuse or neglect proceeding must be made voluntarily and in the best interest of the child:

(b) *Voluntariness of consent.*—Before determining whether or not to accept a stipulation of disposition, the court shall determine that the parties and persons entitled to notice and the opportunity to be heard, understand the contents of the stipulation and its consequences, and that the parties voluntarily consent to its terms. The court must ultimately decide whether the stipulation of disposition meets the purposes of these rules, controlling statutes and is in the best interests of the child. The court shall hear any objection to the stipulation of disposition made by any party or persons entitled to notice and the opportunity to be heard. The stipulations shall be specifically incorporated in their entirety into the court's order reflecting disposition of the case.

Child Abuse and Neglect Proceedings Rule 33 (2000). And the Rules have specific requirements for a voluntary termination of parental rights:

(a) *Uncontested termination of parental rights.*—If a parent voluntarily relinquishes parental rights or fails to contest termination of parental rights, the court shall make the following inquiry at the disposition hearing: ...

(3) If the parent(s) is/are present in court and voluntarily has/have signed a relinquishment of parental rights, the court shall determine whether the parent(s) fully understand(s) the consequences of a termination of parental rights, is/are aware of possible less drastic alternatives than termination, and was/were informed of the right to a hearing and to representation by counsel.

Child Abuse and Neglect Proceedings Rule 35 (2000). While the statute and the Rules demonstrate a strong concern that any so-called voluntary termination of parental rights truly be a voluntary decision, i.e., made with an understanding of the consequences and free of duress, they do not authorize the Department, by withholding its agreement, to preclude a circuit court from accepting a parent's truly voluntary agreement to the termination of his or her parental rights.

The Department is correct that an *involuntary* termination of parental rights carries lasting consequences for the parent beyond the termination of rights with respect to the child or children in question. As the Department points out, it is required by statute to file a petition regarding any other children of a parent who has had his or her rights involuntarily terminated.

(a) Except as provided in subsection (b) of this section, the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights:

(1) If a child has been in foster care for fifteen of the most recent twenty-two months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is sixty days after the child is removed from the home;

(2) If a court has determined the child is abandoned; or

(3) If a court has determined the parent has committed murder or voluntary manslaughter of another of his or her children; has attempted or conspired to commit such murder or voluntary manslaughter or has been an accessory before or after the fact of either crime; has committed unlawful or malicious wounding resulting in serious bodily injury to the child or to another of his or her children; *or the parental rights of the parent to a sibling have been terminated involuntarily.*

W. Va.Code § 49–6–5b (1998) (emphasis added). Thus, if the termination of Victoria's parental rights with respect to her two children is deemed involuntary, the Department will have a duty to file a petition if she has any additional children.

■ We have explained that the involuntary termination of a parent's rights, while requiring the Department to file a petition, does not result in the automatic termination of rights as to other children born to the same parent:

> When the parental rights of a parent to a child have been involuntarily terminated, *W. Va.Code*, 49–6–5b(a)(3) [1998] requires the Department of Health and Human Resources to file a petition, to join in a petition, or to otherwise seek a ruling in any pending proceeding, to terminate parental rights as to any sibling(s) of that child.
>
> While the Department of Health and Human Resources has a duty to file, join or participate in proceedings to terminate parental rights in the circumstances listed in *W. Va.Code*, 49–6–5b(a)(3) [1998], the Department must still comply with the evidentiary standards established by the Legislature in *W. Va.Code*, 49–6–2 [1996] before a court may terminate parental rights to a child, and must comply with the evidentiary standards established in *W. Va. Code*, 49–6–3 [1998] before a court may grant the Department the authority to take emergency, temporary custody of a child.

Syl. pts. 1 and 2, *In re George Glen B. Jr.*, 207 W.Va. 346, 532 S.E.2d 64 (2000). While this language is instructive, it does not bear directly on the outcome of the instant case. The question before this Court today is whether the Department, or the circuit court, may refuse to accept a voluntary termination of parental rights in an abuse and neglect proceeding.

The Department directs us to a case where a mother consented to the adoption of her child by a third party during the pendency of a child abuse and neglect proceeding. We found in that case that language in W. Va. Code § 49–6–5(a)(6)(1992) prevented such an action before the abuse and neglect proceeding reached its end:

> This language [of *W. Va.Code*, 49–6–5(a)(6)(1992) ] is designed to forestall any attempt by anyone to obtain custody of an abused or neglected child through adoption until there is a final disposition of the abuse and neglect case by the circuit court.

Thus, the consent to adopt given by Jacqueline F. is a nugatory act until the final disposition of this case.

From the foregoing provisions, we conclude that where a child abuse and neglect proceeding has been filed against a parent, such parent may not confer any rights on a third party by executing a consent to adopt during the pendency of the proceeding. *Alonzo v. Jacqueline F.*, 191 W.Va. 248, 250, 445 S.E.2d 189, 191 (1994).

While it is true that *Alonzo* stands for the proposition that a parent's right to control the custody or placement of a child is limited while the state is proceeding against that parent, we are faced with a somewhat different issue in the instant case. In this case, the nature of the termination of rights, voluntary or involuntary, does not affect these children; their legal relationship with their mother has in any event been severed. The nature of the termination of rights basically affects, at present, only one person—Victoria.

■ We agree with the Department that a parent like Victoria may have similar problems with later-born children. We understand the Department's concern that later-born children not "fall through the cracks" and escape the notice of the authorities. The guiding principle in any child abuse or neglect proceeding is to do what is best for the child: "First and foremost in a contest involving the custody of a child is the consideration of that child's welfare. It has been held repeatedly by this Court that the welfare of the child is the polar star by which the discretion of the court will be guided." *State ex rel. Cash v. Lively*, 155 W.Va. 801, 804, 187 S.E.2d 601, 604 (1972); *accord, Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989); *State ex rel. Rose L. v. Pancake*, 209 W.Va. 188, 192, 544 S.E.2d 403, 407 (2001) (Davis, J. concurring).

We cannot overstate this precept. Doing what can be done to rescue a child from an abusive situation is more than a metaphorical celestial aid to our navigation; the welfare of the child is the *raison d'etre* for our abuse and neglect law—nothing is more important. Nothing in this opinion should be construed as a departure from this principle.

We note that while W.Va.Code § 49–6–5b (1998) does not include the voluntary termination of parental rights as one of the factors triggering a new petition against a parent with additional children, the *absence* of one of these factors does not in any way prevent the Department from filing such a petition should conditions warrant. Nothing prevents the Department from conducting an investigation if it believes that a parent who has voluntarily terminated parental rights with respect to one child might be mistreating another child, or from providing such a parent with assistance or counseling where available.

We also recognize that in some circumstances a truly voluntary termination is clearly the best disposition of an abuse and neglect petition. The statutes do not say that the DHHR is the determiner of when such circumstances exist, nor is the parent appointed by statute as the determiner of such circumstances. Rather, the statutes provide that the circuit judge must independently make such a determination, having heard from all sides.

█ We hold, therefore, that in the context of an abuse and neglect proceeding, a court may accept a parent's voluntary relinquishment of parental rights without the consent of the West Virginia Department of Health and Human Resources, provided that the agreement meets the requirements of W.Va.Code § 49–6–7 (1977)[3], where applicable, and the relevant provisions of the Rules of Procedure for Abuse and Neglect Proceedings. The Department, of course, had every right to oppose the agreement that was offered by Victoria for the voluntary termination of her parental rights. But we find no authority for the proposition that the circuit court was bound to adopt the Department's position.

█ We hold, therefore, that a circuit court has discretion in an abuse and neglect

proceeding to accept a proffered voluntary termination of parental rights, or to reject it and proceed to a decision on involuntary termination. Such discretion must be exercised after an independent review of all relevant factors, and the court is not obliged to adopt any position advocated by the Department of Health and Human Resources.

In the instant case, the circuit court did not exercise its discretion, but rather viewed itself as bound by the non-acquiescence of the DHHR to a voluntary termination. This, we conclude, was erroneous.

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Raleigh County is reversed, and remanded for reconsideration of the issue of permitting the voluntary relinquishment of Victoria's parental rights as to James G. and Emmett M. L., III.

Reversed and remanded.

---

**3.** Our ruling in this case is in harmony with our decision in the case of *In re Tessla N.M. and Sarah S.B.*, 211 W.Va. 334, 566 S.E.2d 221, 2002). While the instant case deals with a written agreement, the *Tessla* opinion deals with a voluntary relinquishment of rights made orally in open court, which the court in that case willingly accepted, but which the mother later wished to retract. We held in *Tessla* that, because the Rules of Procedure for Child Abuse and Neglect Proceedings have provisions for making an oral relinquishment of parental rights, no writing is needed so long as one complies with the requirements of the Rules.