# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **J.S. and T.S.**

**No. 19-0237** (Fayette County 18-JA-59 and 18-JA-60)

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.S., by counsel Jennifer M. Alvarez, appeals the Circuit Court of Fayette County's February 20, 2019, order terminating his parental rights to J.S. and T.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parlsey, filed a response in support of the circuit court's order. The guardian ad litem, Vickie L. Hylton, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in explaining the applicable burden of proof at disposition and in denying his request to leave his parental rights intact.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2018, the DHHR filed an abuse and neglect petition that alleged petitioner engaged in domestic violence in the home. Child Protective Services ("CPS") arrived at the home subsequent to a law enforcement response and found B.T., the mother of J.S., "in the officer's car . . . being treated for multiple injuries," including "multiple bruises and cuts on her entire body." Ultimately, B.T. was admitted to the intensive care unit at CAMC General Hospital as a result of her injuries. After her release from the hospital, B.T. told CPS that, during the course of their four-year relationship, petitioner "has always been physically abusive." According to B.T., petitioner would interrogate her and "would use a blow torch to burn her arms if she . . . [gave] the wrong response." B.T. also indicated that petitioner used "electronic cables to choke her," and "a baseball

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

bat, a knife, a wooden stick, and outdoor shears to hurt her until she would give him the desired response." Although B.T. initially indicated that her injuries were the result of an ATV accident, she admitted that she lied because petitioner said he "would kill her and the children" if she told law enforcement or CPS the truth.

During the CPS investigation, petitioner "stood on the porch yelling at law enforcement and the CPS workers to leave his property" and appeared to be under the influence of alcohol. Petitioner refused to permit CPS into his home or to speak to the children privately. According to the petition, the children "were fearful of [petitioner] and were scared to speak to CPS in his presence." The day after the domestic violence incident, ten-year-old T.S. was interviewed at a child advocacy center. During the interview, the child disclosed an additional instance of domestic violence. The day prior to the incident referenced above, the child called emergency services because petitioner "was hitting" B.T. Law enforcement responded but ultimately left, after which petitioner grabbed T.S. by the throat, pushed her against a wall, and destroyed her cell phone. According to the child, petitioner resumed hitting B.T., including with a baseball bat, "for the entire night." The child obtained another cell phone, recorded petitioner hitting B.T., and again contacted law enforcement. Following the petition's filing, petitioner waived his preliminary hearing. Thereafter, petitioner was indicted for multiple crimes in relation to the incident giving rise to these proceedings, including kidnapping and malicious assault. As a result, petitioner remained incarcerated throughout the proceedings.

In October of 2018, the circuit court held an adjudicatory hearing. The circuit court heard testimony from one of the officers who responded to the incident giving rise to the petition, a CPS worker, and B.T. The DHHR also introduced photographic evidence that demonstrated the severity of B.T.'s injuries and the weapons used to inflict them. The evidence showed that law enforcement recovered a blow torch, baseball bat, garden shears, and charging cables, which were the instruments that B.T. indicated petitioner used to injure her. Based on the evidence, the circuit court found that petitioner engaged in "an ongoing pattern of serious domestic abuse perpetrated . . . in the presence of the . . . children." The circuit court further found that the children witnessed much of the "brutal domestic violence" petitioner inflicted upon B.T. As such, the circuit court found petitioner to be an abusing parent.

In December of 2018, the circuit court held a dispositional hearing. Petitioner initially attempted to voluntarily relinquish his parental rights to the children. However, after the circuit court informed petitioner of the rights that he would be waiving if it were to accept his voluntary relinquishment, petitioner withdrew his request. After moving to a contested dispositional hearing, the circuit court found that petitioner "has not taken any responsibility for his actions[] and does not think he did anything wrong," despite the fact that he "severely abused" B.T. in the children's presence. The circuit court further found that there was no reasonable likelihood petitioner "will ever be able to correct the abusive . . . circumstances" present in the case. Based on the children's welfare and best interests, the circuit court terminated petitioner's parental rights to the children.[2] It is from the dispositional order that petitioner appeals.

---

[2]According to respondents, the permanency plan for the children is to remain in the custody of their respective mothers.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, we find no error in the proceedings below.

Petitioner first alleges that the circuit court erred in incorrectly explaining the burden of proof at disposition, which caused him to believe that the DHHR's burden of proof in regard to terminating his parental rights was higher than it truly was. As a result, petitioner argues that this erroneous information "had a [d]irect [i]mpact" on his decision to proceed to a contested hearing. Essentially, petitioner argues that "the [c]ourt talked [him] out of his voluntary relinquishment" and that the involuntary termination of his parental rights will have a negative impact beyond the specific circumstances of this case. Upon our review, however, we find that petitioner is entitled to no relief.

First, it is important to note that petitioner did not have an absolute right to voluntarily relinquish his parental rights to the children. Indeed, this Court has held as follows:

"[a] circuit court has discretion in an abuse and neglect proceeding to accept a proffered voluntary termination of parental rights, or to reject it and proceed to a decision on involuntary termination. Such discretion must be exercised after an independent review of all relevant factors, and the court is not obliged to adopt any position advocated by the Department of Health and Human Resources." Syl. Pt. 4, *In re James G.*, 211 W.Va. 339, 566 S.E.2d 226 (2002).

Syl. Pt. 6, *In re T.W.*, 230 W. Va. 172, 737 S.E.2d 69 (2012). As this Court has explained, the circuit court had the ultimate discretion in determining whether to accept petitioner's request to voluntarily relinquish his parental rights. As such, petitioner cannot establish, even assuming that his arguments are taken as true, that the circuit court deprived him of any protected right. On the contrary, petitioner was entitled to a contested dispositional hearing wherein the DHHR was required to prove, by clear and convincing evidence, that termination of his parental rights was warranted. *See* W. Va. Code § 49-4-604(a) (requiring that, following adjudication and the filing of a case plan, "[t]he court shall forthwith proceed to disposition giving [the parent] an opportunity to be heard."); *State v. C.N.S.*, 173 W. Va. 651, 656, 319 S.E.2d 775, 780 (1984) ("The State must

produce clear and convincing evidence to support finding[s] [that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and that termination is necessary for the welfare of the child] before the court may sever the custodial rights of the natural parents."). The record shows that petitioner was afforded this right.

Moreover, petitioner's argument that the circuit court's erroneous explanation concerning the applicable burden of proof at disposition caused him to withdraw his request to voluntarily relinquish his rights is without merit. We find no error in the circuit court's explanation at disposition, where the following exchange occurred:

THE COURT: And do you understand that [the DHHR's] obligation—if they tried to [seek termination of petitioner's parental rights] that would be by clear and convincing evidence. They would have to show me by clear and convincing evidence that it was in the children's best interests to terminate your parental rights. Do you understand that?

[PETITIONER]: Yes, I was told that it don't take that much evidence—

. . . .

THE COURT: Well, the standard here is pretty high, that they would have to meet. They would have to prove evidence—by clear and convincing evidence, which is almost like beyond a reasonable doubt. That it's the best interests of the children for me to terminate your parental rights[] today.

[PETITIONER]: The way I understood it sir, was that it didn't take that much evidence to more or less terminate my rights—to take lower standards by law than what a criminal proceeding would be.

[PETITIONER'S COUNSEL]: Your Honor, if I may. I did explain to him that clear and convincing is not the same—it is not as high a standard of proof as beyond reasonable doubt, that's what he's talking about.

THE COURT: Okay, all right, but it is pretty close.

Following this exchange, petitioner indicated that he wished to proceed to a contested disposition instead of attempting to voluntarily relinquish his parental rights. While petitioner argues on appeal that this explanation was erroneous and that it prejudiced him by resulting in his decision to contest disposition, we find that the circuit court's explanation was not in error and resulted in no prejudice to petitioner.

This Court has addressed the applicable burden in abuse and neglect proceedings as it relates to the heightened burden in criminal proceedings by holding that

[i]t is imperative to note that the evidence in an abuse and neglect case does not have to satisfy the stringent standard of beyond a reasonable doubt; the evidence

4

must establish abuse by clear and convincing evidence. This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996) (internal citations omitted). We have also stated that the clear and convincing standard is "intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cramer v. W. Va. Dept. of Highways*, 180 W.Va. 97, 99 n. 1, 375 S.E.2d 568, 570 n. 1 (1988).

*In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014). On appeal, petitioner argues that the circuit court "convinced" him that the clear and convincing burden and the beyond a reasonable doubt burden were "virtually the same." The record does not support this assertion. On multiple occasions, the circuit court specifically indicated that, although "pretty close," the two burdens of proof were not identical. In addition, petitioner's counsel indicated that she also "explain[ed] to [petitioner] that clear and convincing . . . is not as high a standard of proof as beyond a reasonable doubt." Simply put, there is nothing in the record to support petitioner's contention that the circuit court led him to believe these burdens of proof were identical. On the contrary, the record shows that, prior to the colloquy with the court, petitioner believed "that it didn't take that much evidence" to terminate his parental rights. In attempting to ensure petitioner understood his rights, the circuit court correctly informed him that this belief was inaccurate. As set forth above, the clear and convincing burden is not as low as petitioner believed, given that it is higher than a mere preponderance. Further, as the circuit court correctly informed petitioner, this burden of proof is also something less than beyond a reasonable doubt. Because we find no error in the circuit court's explanation of the applicable burden of proof, petitioner is entitled to no relief.

Finally, we find no error in the termination of petitioner's parental rights because the DHHR established that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary for the children's welfare. According to petitioner, the circuit court erred in failing to impose a less-restrictive dispositional alternative, such as ordering no visitation between petitioner and the children, so that the children could potentially receive "future support" from petitioner or his family. Petitioner's entire argument appears to be predicated on the financial benefits the children could possibly receive had he retained his parental rights. However, petitioner ignores his failure to accept responsibility for the severe abuse he perpetrated and the applicable statutes mandating termination of his parental rights.

As this Court has held,

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). The circuit court specifically found that petitioner not only failed to accept responsibility, but, more egregiously, "does not think he did anything wrong." Further, the circuit court found that, due to the severity of the abuse and petitioner's failure to acknowledge the same, there was no reasonable likelihood petitioner could correct the conditions of abuse in the near future and that termination of his parental rights was in the children's best interests. According to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, termination of petitioner's parental rights was not in error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 20, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: September 13, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison